# IN THE COURT OF APPEALS OF IOWA

No. 24-0361
Filed January 9, 2025

**JEFFREY ALLAN GOODWIN,**
    Plaintiff-Appellant,

**vs.**

**STATE OF IOWA,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Cherokee County, John M. Sandy, Judge.

The plaintiff appeals the grant of summary judgment in favor of the defendant because of the plaintiff's failure to file a certificate of merit pursuant to Iowa Code section 147.140 (2022). **AFFIRMED.**

Adam C. Witosky and Matthew M. Boles of Gribble Boles Stewart & Witosky Law, Des Moines, for appellant.

Brenna Bird, Attorney General, Ian Jongewaard and Breanne A. Stoltze, Assistant Solicitors General, and Shannon Archer and Adam Kenworthy, Assistant Attorneys General, for appellee State.

Heard by Greer, P.J., and Buller and Langholz, JJ.  Sandy, J., takes no part.

**GREER, Presiding Judge.**

Jeffrey Goodwin is a sexually violent predator[1] committed to State care at the Civil Commitment Unit for Sexual Offenders (CCUSO). He brought a civil suit against the State based on allegations that Dr. Susan Sanders, a State-employed psychologist who provided him mental-health treatment at CCUSO, engaged in inappropriate sexual conduct with him during his weekly therapy sessions.[2] The State urged that all four of Goodwin's negligence claims boiled down to an allegation that Sanders's actions in the weekly therapy sessions were not part of appropriate treatment for a sexually violent predator. It moved for summary judgment, asserting that because expert testimony was needed to establish what treatment is appropriate, Goodwin was required to file a certificate of merit within sixty days of the State's answer and his failure to comply required dismissal of his claims with prejudice. *See* Iowa Code § 147.140(1), (6). Goodwin resisted, arguing an expert was not necessary to establish that engaging in sexual conduct with one's mental-health patient was improper, so no certificate of merit was needed. The district court concluded expert testimony was necessary so failure to file a certificate of merit was fatal to Goodwin's case. It granted the State's motion

---

[1] "Sexually violent predator" is a statutorily-defined term, meaning "a person who has been convicted of or charged with a sexually violent offense and who suffers from a mental abnormality which makes the person likely to engage in predatory acts constituting sexually violent offenses, if not confined in a secure facility." Iowa Code § 229A.2(13) (2022).

[2] Goodwin brought one count of negligence and one count of professional negligence against Sanders and one count of negligence and one count of negligent hiring, retention, and supervision against the State. Because the claims against Sanders were as an employee of the State acting within the scope of her employment, which the State certified, the State was sued in her place. *See* Iowa Code § 669.5(2)(a), (b).

for summary judgment, which Goodwin challenges on appeal.[3]  We affirm the district court's dismissal.

**I. Background Facts and Proceedings.**

In 2022, Goodwin brought suit against the State, which operates CCUSO, where Goodwin was civilly committed.  Goodwin pled that he was "receiving treatment at CCUSO related to his allegedly sexually violent behavior" and "[a]s part of [his] treatment, he had treatment sessions with [Sanders], a psychologist, who was the director of the treatment program at CCUSO."  He claimed, "Sanders was a state employee and acting within the scope of her employment at the time of the incidents."  Specifically, Goodwin alleged:

> 11. During weekly sessions, Sanders frequently had sexually motivated discussions with [him].
> 12. The discussions often involved Sanders sharing secrets about her sexual history and experiences.
> 13. Sanders viewed pornographic material with [him] claiming that it was a part of his "treatment."
> 14. Sanders encouraged [him] to masturbate in her presence.
> 15. Sanders encouraged [him] to write sexually motivated fantasies and stories about her.
> 16. Sanders utilized her position of power to treat [him] as her test subject, and [she] used him for her own personal pleasure.

Goodwin claimed negligence by Sanders (count I), asserting "Sanders was a licensed psychologist and therapist for CCUSO," she "was responsible for treating patients at CCUSO, including [him]," and she "owed a common law duty to conform to a standard of care to [him]."  He alleged that "Sanders used her position of power and trust to sexually exploit and manipulate [him]."  Goodwin

---

[3] The district court also granted summary judgment in favor of the State on Goodwin's two counts of intentional infliction of emotional distress and one count of respondeat superior; Goodwin does not challenge those rulings on appeal.

brought a similar negligence claim against the State (count V), asserting "the State owed a common law duty to conform to a standard of care," which it failed to do and that "[t]he State failed to protect [him]" as a patient at its facility, causing him injuries and damages.

In a professional-negligence claim based on Sanders's alleged action (count III), Goodwin asserted:

> 38. Sanders owed [him] a duty to provide the same level of skill and care ordinarily possessed and exercised by others in the field of therapy and psychology.
> 39. Sanders failed to exercise that level of skill and care ordinarily possessed and exercised by others in the field of therapy and psychology in one or more of the following particulars:
> a. Exploiting [his] sexual propensities and predispositions during treatment sessions;
> b. Viewing pornographic material with [him] during treatment sessions;
> c. Encouraging [him] to masturbate in her presence during treatment sessions;
> d. Engaging in sexually inappropriate conversations with [him] during treatment sessions;
> e. In failing to have furnished [him] with proper therapeutic and psychological services under the circumstances;
> f. In failing to have exercised ordinary care under the circumstances . . .
> . . . .
> 40. The therapeutic and psychological services provided by Sanders departed from the standard of reasonable care and skill exercised by therapists and psychologists in good standing under like circumstances.
> 41. Sanders exploited her professional position as [his] therapist to sexually abuse [him].

Goodwin also brought a claim of negligent hiring, training, retention, and supervision against the State (count VI); alleging:

> 60. The State was reckless or negligent in failing to adopt proper procedures or protocols relating to the supervision and monitoring of therapists' interactions with patients.
> 61. The State was reckless or negligent in failing to ensure that adopted procedures and protocols were properly followed

relating to the supervision and monitoring of therapists' interactions with patients.

62. The State was reckless or negligent in monitoring the treatment sessions of its therapists.

63. The State was reckless or negligent in failing to adopt proper procedures or protocols relating to inappropriate relationships between patients and employees.

64. The State was reckless or negligent in failing to ensure that adopted procedures and protocols were properly followed relating to inappropriate relationships between patients and employees.

65. The State was reckless or negligent in failing to ensure the safety of its patients.

66. The State was reckless or negligent in the supervision of Sanders.

The State filed its answer on July 15, 2022.

Then, more than sixteen months later, the State moved for summary judgment, asserting Goodwin's claims were based on the alleged negligence of a health care provider, so expert testimony was needed to prove his claims.[4] Because expert testimony was needed, Goodwin was required to file a certificate of merit[5] within sixty days of the State's answer, and his failure to file it required dismissal of those claims pursuant to Iowa Code section 147.140.

Goodwin resisted. He maintained Sanders's alleged conduct of a State-employed therapist engaging in sexual conduct with a patient was such an obvious a breach of the standard of care that it could be comprehended by the average layperson without expert testimony. In a different vein, he asserted an expert was not needed because "[n]either the position of the employee nor the context in which

---

[4] Neither party asked us to consider the timeliness of the State's motion for summary judgment. *Cf. S.K. by & through Tarbox v. Obstetric & Gynecologic Assocs. of Iowa City & Coralville, P.C.*, 13 N.W.3d 546, 554, 569–73 (Iowa 2024).

[5] A certificate of merit "is 'an affidavit signed by an expert stating the appropriate standard of care and its alleged breach.'" *Est. of Butterfield v. Chautauqua Guest Home, Inc.*, 987 N.W.2d 834, 837 (Iowa 2023) (citation omitted).

the acts occurred is relevant to them violating security and boundary rules." At the hearing on the motion for summary judgment, Goodwin explained this in another way, arguing that engaging in sexual conduct with Goodwin would have been wrong "from the director on down to the janitor" because he was "essentially [a] captive patient[]."[6]

The district court granted the State's motion for summary judgment on all four of Goodwin's negligence claims. It concluded expert testimony was required to establish the standard of care and whether Sanders breached that standard for Goodwin's claim for professional negligence against Sanders (count III). The court reasoned:

> The standard of care for a mental health professional working on a sexually violent predator is not within the understanding of the Court, much less a common lay juror. For example, therapy generally involves the practitioner conversing with the patient about the subject for which the patient is being treated. When such treatment is for being a sexually violent predator of some description, that conversation would necessarily include some sexual elements. While there is no doubt that there are some lines which the mental health professional should not cross, this Court does not know where they are or whether Sanders crossed them; that is the prerogative of an expert, not an ordinary individual.

The district court also concluded an expert was necessary for Goodwin's "ordinary negligence" claim against Sanders (count I) "because it is just the professional negligence claim repackaged"—"Both claims are that Sanders used her position as a therapist, a medical professional, to exploit and harm" Goodwin. And the court ruled expert testimony was necessary to establish Goodwin's claims against

---

[6] Other than his general stance that no expert (and therefore no certificate of merit) is necessary, the record is silent as to why an expert was not retained; the current counsel of record is not the same counsel of record at the time the certificate of merit would have been due.

the State for negligence (count V) and negligent hiring, training, retention and supervision (count VI), reasoning that proving each of those claims depended on Goodwin's ability to prove his professional negligence claim against Sanders. In other words, "[i]f Sanders were found to be on the right side of the standard of care, there would be no claims against the State for negligence, whether generally or for hiring, retention, training, and supervision." Because expert testimony was necessary, Goodwin was required to file a certificate of merit within sixty days of the State's answer in regard to his four negligence claims. Due to his failure to do so, the district court granted the State's motion for summary judgment on all of Goodwin's negligence claims.

Goodwin appeals.

## II. Standard of Review.

We review summary judgment rulings for correction of errors at law. *Kirlin v. Monaster*, 984 N.W.2d 412, 415 (Iowa 2023). "Because this appeal turns on the district court's application of section 147.140, summary judgment is the proper vehicle to test the validity of the claim and we need only decide whether the district court properly applied the law." *Id.* (cleaned up).

## III. Discussion.

"It is well settled that expert testimony is [generally] required to prove professional negligence claims against healthcare providers." *Struck v. Mercy Health Servs.-Iowa Corp.*, 973 N.W.2d 533, 539 (Iowa 2022). Specifically, "evidence of the applicable standard of care—and its breach—must be furnished by an expert." *Id.* (citation omitted). Section 147.140 was enacted "to provide a mechanism for early dismissal with prejudice of professional liability claims against

healthcare providers when supporting expert testimony is lacking." *Id.* The statute requires "the plaintiff in a medical malpractice action requiring expert testimony [to] file a certificate of merit signed by a qualified expert within sixty days of the defendant's answer." *Id.* at 538.

That said, there are some instances when expert testimony is not required to prove negligence. Our supreme court has recognized two exceptions to the general rule—

> One is where the physician's lack of care is so obvious as to be within the comprehension of a lay[person] and requires only common knowledge and experience to understand. The other exception is really an example of the first situation. It arises when the physician injures a part of the body not being treated.

*Oswald v. LeGrand*, 453 N.W.2d 634, 636 (Iowa 1990) (citation omitted). "For example, expert testimony would not be required in a malpractice action alleging the surgeon removed the wrong kidney or inadvertently left a clamp inside the patient's body." *Struck*, 973 N.W.2d at 539 n.4. And when no expert testimony is required, there is no need for a certificate of merit. *See Est. of Butterfield*, 987 N.W.2d at 841 ("[I]t makes no sense to require a party to hire an expert just to fill out a certificate of merit when no expert is necessary for those elements. . . . Rather, it is reasonable to conclude there is no need for a certificate of merit about the standard of care and breach when an expert is needed for neither of those elements.").

As he did at the district court, Goodwin lumps all four of his negligence claims together. He broadly argues that no expert testimony is needed to establish the standard of care or whether it was breached through Sanders's conduct and

points to the test laid out by our supreme court to determine whether an expert is necessary:

> If all the primary facts can be accurately and intelligibly described to the jury, and if they, as persons of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience, or observation in respect of the subject under investigation, expert testimony is not required.

*Struck*, 973 N.W.2d at 543 (cleaned up).

We start with Goodwin's claim of professional negligence. Goodwin maintains that no expert is needed to establish that a psychologist working with a sexually violent predator breaches the standard of care by discussing the patient's "sexual fantasies about her, watching pornography with him, [and] watching him masturbate in front of her" during therapy sessions. He also alleged that in his last session with her, he "touched Sanders on the buttocks as she leaving" and "does not recall her telling him not to touch her." He cites a Wisconsin case where a patient performed oral sex on her psychiatrist during therapy sessions for the proposition that "[m]edical authorities are nearly unanimous in considering sexual contact between therapist and patient to be malpractice." *L.L. v. Medical Protective Co.*, 362 N.W.2d 174, 175–77 (Wisc. Ct. App. 1984). Ignoring that *L.L.* is from another jurisdiction, we think it is easily distinguishable. First, the "sexual contact" at issue in *L.L.* is not the same as the conduct Goodwin pled in his case— he alleged that Sanders watched while he touched himself, viewed pornographic material with him, and engaged in conversations about sex fantasies. And second, while we agree it is readily apparent that a patient performing oral sex on their psychiatrist would not be standard treatment to cure the patient's emotional

disorders, it is less obvious whether the "sexual conduct" Goodwin alleges occurred is reputable treatment for sexual deviance. Put another way, it seems possible that discussing sexual fantasies and allowing a patient to watch pornography during treatment sessions fits within the standard of care for treating sexual deviance.

Here, it is undisputed that Goodwin has a complex psychological disorder that requires specialized treatment, and we are left with no understanding of what that treatment should look like in practice. Of course, there are lines that a mental-health professional should not cross. But based on the specific allegations Goodwin pled and the purpose of his treatment, neither we nor a jury of common understanding can say without expert testimony whether Sanders crossed the line in this case. *Cf. Bailey v. Sheppard*, No. C9-92-1928, 1993 WL 99446, at *1 (Minn. Ct. App. Apr. 6, 1993) ("The standard of care identifying the accepted and appropriate medical treatment for sexual psychopaths is not within the common experience of laypersons."). Without a certificate of merit as to this claim, summary judgment was appropriate.[7]

---

[7] Goodwin also argues no expert is needed to prove professional negligence because Iowa Code section 709.15(2)(a)(2)(b) criminalizes sexual exploitation by a counselor or therapist, which includes touching of the clothed buttock. He argues the "potentially criminal nature of such conduct" makes it readily apparent that the conduct breaches the standard of care. But as the State points out, Goodwin's argument ignores section 709.15(2)(b) provides, "Sexual exploitation by a counselor or therapist *does not include touching which is part of a necessary . . . treatment* provided a patient or client by a counselor or therapist *acting within the scope of the practice or employment in which the counselor or therapist is engaged.*" So, the question remains whether the touching Goodwin alleges was part of treatment provided within the scope of practice.

Next, we consider Goodwin's claim of ordinary negligence against Sanders (count I). Like the district court, we conclude that while Goodwin purported to raise a separate, nonmedical negligence claim, it is just his professional negligence claim repackaged. We assume it is this claim Goodwin was attempting to save when he argued to the district court that Sanders's actions were a breach regardless of her professional role, suggesting she would have been negligent even if she was the janitor of the facility. And because the breach was not dependent on her professional role, an expert was not required to establish the standard of care.

But that argument is at odds with what Goodwin pled as his claim of ordinary negligence and with the position he took during oral argument before our court. When pressed to provide the details of the ordinary negligent behavior, counsel conceded that all negligence allegations arise from the alleged unprofessional conduct of Sanders. And his earlier allegations that "Sanders was a licensed psychologist and therapist for CCUSO," she "was responsible for treating patients at CCUSO, including [him]," and she "used her position of power and trust to sexually exploit and manipulate" him follow this same core theme. As in *Struck*, Goodwin "is bound by the allegations actually pleaded within the four corners of [his] petition." 973 N.W.2d at 541; *see also Hanson v. Lassek*, 154 N.W.2d 871, 873 (Iowa 1967) ("A party is generally bound by the allegations or admissions of his own pleadings." (citation omitted)). Because proving count I as it is pled requires expert testimony, failure to file the certificate of merit mandates summary judgment for the State.

And, finally, we address Goodwin's claims against the State for negligence (count V) and negligent hiring, training, retention, and supervision (count VI). The district court concluded these claims were also subject to summary judgment because their success was dependent on Goodwin proving his claims of negligence against Sanders (which he could not do without expert testimony and, accordingly, filing a certificate of merit). Goodwin does not dispute this conclusion, which is supported by case law—for a party to recover under a theory of negligent hiring, training, retention, and supervision, "an injured party must show the employee's underlying tort or wrongful act caused a compensable injury, in addition to proving the negligent hiring, supervision, or retention by the employer was a cause of those injuries." *Struck*, 973 N.W.2d at 544. And Goodwin's claim of ordinary negligence against the State is based on Sanders's alleged conduct being negligent. We agree with the district court; without expert testimony, these claims also fail.

Because each of Goodwin's four negligence claims require expert testimony to establish the standard of care and whether Sanders's alleged conduct violated that standard, he was required to file a certificate of merit within sixty days of the State's answer. His failure to do so mandates dismissal with prejudice. *See* Iowa Code § 147.140(6). We affirm the district court's grant of summary judgment.

**AFFIRMED.**